UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EVANS ENERGY PARTNERS, LLC,

    Plaintiff,

v.                                                 Case No. 2:20-cv-978-JLB-MRM

SEMINOLE TRIBE OF FLORIDA, INC.,

    Defendant.
_____

# ORDER

    Defendant Seminole Tribe of Florida, Inc. ("STOFI") is a tribal corporation organized under section 17 of the Indian Reorganization Act, 25 U.S.C. § 5124 (formerly § 477). In 2013, STOFI contracted with Plaintiff Evans Energy Partners, LLC ("EEP") to operate a petroleum distribution business. The contract entitled EEP to a termination fee equal to fifty percent of the business's fair market value if STOFI terminated the contract. Any disputes regarding the termination fee were subject to arbitration under the American Arbitration Association's ("AAA") rules.

    Three years later, amid mutual accusations of default, STOFI terminated the agreement and obtained a default judgment against EEP in tribal court for breach of contract. EEP attempted to compel STOFI to arbitrate the termination fee, but the AAA panel dismissed EEP's demand. EEP now sues STOFI in this Court and seeks: (1) a declaratory judgment that the tribal court had no jurisdiction to enter its final default judgment against EEP, and (2) an order compelling arbitration. (Doc. 1.) STOFI moves to dismiss on several grounds, including tribal sovereign

immunity. (Doc. 12.) The Court has the benefit of not only EEP's opposition brief (Doc. 25) but replies from both parties (Docs. 26, 29).

After careful review, the Court holds that the parties' agreement does not contain a clear waiver of STOFI's tribal sovereign immunity. Accordingly, STOFI's motion to dismiss (Doc. 12) is **GRANTED**, and EEP's claims are **DISMISSED without prejudice**. The Court need not consider STOFI's other arguments for dismissal and declines to hear oral argument.

## BACKGROUND[1]

### I. STOFI and EEP execute the M&O Agreement.

In 2013, STOFI became interested in partnering with EEP to "make a foray into the petroleum distribution business." (Doc. 1 at 4, ¶ 15.) EEP was already operating such a business, and a partnership with STOFI would provide EEP with "significant capital and tax advantages." (Id. at ¶¶ 14, 16.)

On May 31, 2013, the parties executed a Management and Operations Agreement ("M&O Agreement") under which EEP would oversee the day-to-day operation of the petroleum distribution business and provide STOFI with fifty percent of the profits. (Doc. 1-1 at 1–2, ¶¶ 1.2, 1.3.) In return, STOFI would provide capital in the form of loans and asset purchases. (Doc. 1-2 at 2–3, ¶¶ 7–8.)

Two provisions of the M&O Agreement are particularly important to this case. First, paragraph 2.4 provides that if the M&O Agreement is terminated, EEP

---

[1] The Court considers all documents attached to and incorporated by reference into the complaint. See Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). The Court also takes judicial notice of STOFI's charter and bylaws. See Fed. R. Evid. 201(b)(2).

will be entitled to a termination fee equal to fifty percent of the joint venture's fair market value. (Doc. 1-1 at 4, ¶ 2.4.) Second, paragraph 7.13 describes the process for settling any dispute arising under the M&O Agreement. That paragraph provides, in its entirety:

> Any dispute, controversy, claim, question, or difference arising out of this Agreement <u>shall be finally settled by a binding proceeding administered by the Tribal Counsel of the Seminole Tribe of Florida</u> or as specifically delegated under the provisions of the Amended Constitution and By Laws of the Seminole Tribe of Florida. <u>Notwithstanding what is set forth above, the Company</u> through its parent company the Seminole Tribe of Florida, Inc., <u>agrees to a limited waiver of its Sovereign Immunity in order to allow Evans Energy to initiate a binding arbitration proceeding administered under the rules of the American Arbitration Association for sole and exclusive purpose of terminating the Management Agreement and compelling the payment of the Termination Fee as set forth in [paragraph] 2</u> above and said waiver shall include a waiver of immunity for collection of any sum awarded through the binding arbitration proceeding. The parties specifically agree that <u>in no event shall the Seminole Tribe of Florida, Inc., or any of its other affiliated entities be named a party in any arbitration or court proceeding. Evans Energy's rights under [paragraph] 7.13 shall be restricted to compelling Seminole Energy to participate in an arbitration proceeding</u> for the express purpose set forth herein.

(Doc. 1-1 at 16–17) (emphasis added). To summarize, paragraph 7.13 provides that any dispute between the parties shall be resolved either by the Seminole Tribe or whatever procedure exists under the Tribe's bylaws. Notwithstanding this default procedure, "the Company" (a term defined on page one of the M&O Agreement to mean STOFI) agrees to a limited waiver of sovereign immunity for purposes of arbitrating issues regarding the termination fee in paragraph 2.4. The limited waiver contains a strange redundancy—the "parent company" of "the Company" is also STOFI. Moreover, the very next sentence provides that neither STOFI nor any

3

affiliated entities shall "be named a party in any arbitration." Instead, EEP's rights under are "restricted to compelling Seminole Energy" to arbitrate.

"Seminole Energy" is not a defined term, although it appears in at least three more places within the M&O Agreement. (Id. at ¶¶ 3.2.1, 3.6, 4.7.) For example, in paragraph 3.2.1, EEP agrees that it will not enter into any agreements with STOFI's (i.e., the Company's) "respective Affiliates, Seminole Energy, [or] Managers or Officer[s]" without STOFI's prior approval. (Id. at ¶ 3.2.1.) This language seems to suggest that Seminole Energy may be an "affiliated entity" of STOFI under paragraph 7.13. But if that were true, then paragraph 7.13 would simultaneously permit and prohibit arbitration with Seminole Energy. Moreover, paragraph 4.3 provides, "Seminole Energy shall further refrain from intentionally taking any action that will be detrimental to the operations or financial performance of the Company." (Id. at ¶ 4.7.) This language appears to imply that STOFI and Seminole Energy are distinct entities capable of independent (or even conflicting) action.

**II.    STOFI terminates the M&O Agreement and obtains a clerk's default against EEP in tribal court.**

On April 4, 2016, STOFI's general counsel sent a letter to one of EEP's managing members, informing him that STOFI was terminating the M&O Agreement for cause. (Doc. 1 at 6, ¶ 30; Doc. 12-2.) Nearly three months later, STOFI filed a two-count petition for relief against EEP in tribal court. (Doc. 1-2.) The petition alleged that EEP failed to perform several of its obligations under the M&O Agreement. (Id. at 3–4, ¶¶ 9–10.) Accordingly, STOFI requested: (1) a declaratory judgment that EEP was not entitled to any termination fee because the

4

M&O Agreement was terminated for cause, and (2) damages against EEP for breach of contract. (Id.) EEP never filed a responsive pleading in the tribal court action, which was eventually resolved with a final default judgment in favor of STOFI on May 2, 2019. (Docs. 1-3, 12-4.) Instead, EEP served a demand for arbitration to the AAA on January 18, 2019, naming itself as claimant and STOFI as respondent. (Doc. 1-4.) The complaint attached to EEP's demand alleged that STOFI breached the M&O Agreement by failing to pay the termination fee, and EEP was therefore entitled to arbitration of the termination-fee dispute under paragraph 7.13 of the Agreement. (Id. at 9.)

On September 29, 2020—more than a year after the tribal court's final default judgment—the AAA arbitration panel dismissed EEP's demand for arbitration. (Doc. 1-5.) More specifically, the panel held that it did not have unmistakable authority to decide the threshold question of arbitrability due to the nebulous language of paragraph 7.13. (Id. at 10–11.) The panel's dismissal order notes that paragraph 7.13 "contains several distinct and seemingly contradictory terms." (Id. at 4.) The order continues: "[T]he parties acknowledged that Seminole Energy, which one can infer that the parties contemplated coming into existence per their agreement, was never created. Even if it had been created, it is not clear whether it would have been considered an affiliated entity of STOFI." (Id. at 4–5.)

### III. EEP commences this case against STOFI.

Two-and-a-half months after the AAA panel's ruling, EEP filed the complaint in this case, seeking: (1) a declaratory judgment that the tribal court had no jurisdiction to enter its final default judgment against EEP, and (2) an order

5

compelling arbitration of STOFI's failure to pay the termination fee under section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4.  (Doc. 1.)

STOFI moves to dismiss on multiple grounds, including: (1) EEP failed to exhaust tribal remedies, (2) the Court lacks subject matter jurisdiction to compel arbitration, (3) STOFI is sovereignly immune, and (4) EEP's request to compel arbitration should be dismissed for failure to state a claim.  (Doc. 12.)  EEP has filed an opposition brief (Doc. 25), and both parties have filed replies (Docs. 26, 29).

## DISCUSSION

Courts must "always address threshold jurisdictional issues first, since we cannot reach questions that we never had jurisdiction to entertain." Leedom Mgmt. Grp., Inc. v. Perlmutter, 532 F. App'x 893, 895 (11th Cir. 2013) (citing Boone v. Sec'y, Dep't Of Corr., 377 F.3d 1315, 1316 (11th Cir. 2004)).  Tribal exhaustion "is required as a matter of comity, not as a jurisdictional prerequisite." Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 16 n.8 (1987).  Sovereign immunity, however, is "jurisdictional in nature." FDIC v. Meyer, 510 U.S. 471, 475 (1994).  Accordingly, "[w]hen a party raises the defenses of waiver of sovereign immunity and [t]ribal exhaustion in the same proceeding, the majority of Courts of Appeals generally address waiver of sovereign immunity before [t]ribal exhaustion." World Fuel Servs., Inc. v. Nambe Pueblo Dev. Corp., 362 F. Supp. 3d 1021, 1092 (D.N.M. 2019) (collecting cases); see also Tamiami Partners By & Through Tamiami Dev. Corp. v. Miccosukee Tribe of Indians of Fla., 898 F. Supp. 1549, 1561 (S.D. Fla. 1994)

6

(addressing sovereign immunity before trial exhaustion), aff'd in part, appeal dismissed in part, 63 F.3d 1030 (11th Cir. 1995).[2]

In addition to tribal sovereign immunity, STOFI also moves to dismiss EEP's claim to compel arbitration based on lack of subject matter jurisdiction. "[T]here is no mandatory 'sequencing of jurisdictional issues.'" Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (quoting Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999)). In other words, "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" Id. (quoting Ruhrgas AG, 526 U.S. at 585). Given this leeway, the Court will address tribal sovereign immunity first. As explained below, the Court finds that STOFI has not clearly waived its tribal sovereign immunity. The Court will, therefore, grant STOFI's motion solely based on tribal sovereign immunity without reaching its other arguments.[3]

---

[2] STOFI cites multiple cases for the proposition that courts in the Eleventh Circuit "have found that the failure to exhaust tribal remedies is a jurisdictional bar to seeking relief in federal court." (Doc. 12 at 9.) After carefully examining these cases, the Court believes that STOFI overreads them. While the cases do use the language of jurisdiction, none of them expressly disagree with the Supreme Court's clear instruction that tribal exhaustion is a matter of comity. LaPlante, 480 U.S. at 16 n.8. Instead, these cases seem to emphasize that while tribal exhaustion is a prudential doctrine based on policy concerns, exhaustion is "mandatory . . . when a case fits within the policy." Gaming World Int'l, Ltd. v. White Earth Band of Chippewa Indians, 317 F.3d 840, 849 (8th Cir. 2003). And some courts have held that tribal exhaustion may be raised sua sponte. See, e.g., United States v. Tsosie, 92 F.3d 1037, 1041 (10th Cir. 1996). In that sense, exhaustion of tribal remedies has jurisdictional characteristics. But it is not jurisdictional (at least not in the sense of subject matter jurisdiction).

[3] A motion to dismiss on sovereign immunity grounds is governed by Federal Rule of Civil Procedure 12(b)(1). See Thomas v. U.S. Postal Serv., 364 F. App'x 600, 601 n.3 (11th Cir. 2010). The burden of proof on a Rule 12(b)(1) motion lies with the

## I. STOFI is presumptively protected by tribal sovereign immunity.

"Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978). Neither side disputes that STOFI, a tribal corporation, may assert tribal sovereign immunity. See Inyo Cnty. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony, 538 U.S. 701, 705 n.1 (2003) (accepting uncontested proposition that a tribal corporation was an arm of the tribe); Md. Cas. Co. v. Citizens Nat'l Bank of W. Hollywood, 361 F.2d 517, 521 (5th Cir. 1966) (finding that the waiver of sovereign immunity in STOFI's charter was limited and did not include "the levy of any judgment, lien, or attachment upon the property of [STOFI]").[4]

Tribal sovereign immunity bars actions not only for monetary relief, but also declaratory and injunctive relief. See Santa Clara Pueblo, 436 U.S. at 59. Thus, "as a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. 751, 754 (1998). The Eleventh Circuit has also suggested that an Indian tribe may not waive its sovereign immunity through an official who

---

party that seeks to establish subject matter jurisdiction. See Lawrence v. United States, 597 F. App'x 599, 602 (11th Cir. 2015) (citation omitted). Here, that means EEP "bears the burden of establishing a waiver of sovereign immunity." Id.

[4] Accord Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc., 585 F.3d 917, 921 (6th Cir. 2009) ("Because the language of Section 17 does not explicitly waive sovereign immunity, we conclude that it should not be interpreted to do so impliedly."); Am. Vantage Companies, Inc. v. Table Mountain Rancheria, 292 F.3d 1091, 1099 (9th Cir. 2002) ("A tribe that elects to incorporate does not automatically waive its tribal sovereign immunity by doing so.").

8

is not authorized to do so.  See Sanderlin v. Seminole Tribe of Fla., 243 F.3d 1282, 1288 (11th Cir. 2001) (finding that tribal official was not vested with power to waive sovereign immunity where such an action would not have complied with the procedural for waiver in the tribal constitution and a tribal ordinance).

STOFI's sovereign-immunity argument is two-pronged.  First, it argues that any purported waiver of sovereign immunity in the M&O Agreement does not comply with the procedure for waiver in STOFI's bylaws and charter.  Second, STOFI argues that paragraph 7.13 of the M&O Agreement is too ambiguous to constitute a clear waiver of STOFI's sovereign immunity.  The Court does not agree with the first argument, but the second argument carries the day for STOFI.

**II.     STOFI's charter does not imply that any waiver of sovereign immunity in the M&O Agreement was unauthorized.**

STOFI relies on two documents to argue that any waiver of sovereign immunity in the M&O Agreement was unauthorized: its bylaws and its charter. Article II, section 5 of STOFI's bylaws provides that any delegation of authority by STOFI's board of directors "shall be by written resolution," except "these authorities and responsibilities specifically outlined in Article IV hereto."[5]  (Doc. 12-1 at 8.)  In

---

[5] For whatever reason, STOFI does not actually cite the relevant bylaw in its motion to dismiss.  Instead, STOFI quotes a Florida appellate court as follows: "STOFI's Bylaws require that a sovereign immunity waiver be properly authorized by [STOFI's] Board [of Directors] through a resolution."  MMMG, LLC v. Seminole Tribe of Fla., Inc., 196 So. 3d 438, 447 (Fla. 4th DCA 2016).  The MMMG opinion also does not cite any specific bylaws.  Instead, it provides that "[p]ursuant to STOFI's Bylaws, any delegation of authority to an officer, such as waiving sovereign immunity, must be effected by a written Board resolution and must specify the nature of the authority granted and any imposed limitations."  Id. at 440.  Based on MMMG's characterization and the copy of the bylaws attached to the motion to dismiss, the Court has independently identified the correct bylaw.

9

turn, Article IV of the bylaws describes the duties of STOFI's officers, including its president. Under Article IV, section 3(d), the president has the power to "execute bonds, mortgages, and other contracts when authorized by the Board." (Id. at 13.)

The M&O Agreement is signed by Tony Sanchez, Jr., who is identified in the signature line as STOFI's president. (Doc. 1-1 at 17.) Importantly, STOFI does not dispute that President Sanchez was authorized by STOFI's board of directors to sign the M&O Agreement. Such an argument would probably have negative consequences for STOFI's default judgment against EEP. Instead, STOFI juxtaposes the bylaws' requirement for board approval with language from its charter—a separate document. More specifically, Article VI, section 9 of STOFI's charter provides that STOFI shall have the power:

> [t]o waive its sovereign immunity from suit, but only if expressly stated by contract that such is the case and that such waiver shall not be deemed a consent by the said corporation or the United States to the levy of any judgment, lien, or attachment upon the property of [STOFI], other than income or chattels especially pledged or assigned pursuant to such contract.

(Doc. 12-1 at 5) (emphasis added). STOFI construes the above language from the charter, together with the restriction on delegation of authority in its bylaws, to argue that "there was no proper authorization provided by STOFI's Board of Directors that pledged or assigned any specific property of STOFI in connection with disputes pertaining to the [M&O Agreement]." (Doc. 12 at 22.) Once again, there is no argument—in either STOFI's motion to dismiss or its reply—that the M&O Agreement was entirely unauthorized. Rather, STOFI carefully threads the needle by contending that no board resolution "pledged or assigned" any specific

10

property to satisfy disputes arising under the M&O Agreement. For this reason, STOFI claims that any waiver of sovereign immunity must be ineffective.

The Court cannot agree. Under the plain language of the bylaws, a contractual waiver of sovereign immunity by STOFI does not equate to consent for any judgment or lien on STOFI's property, "other than income or chattels especially pledged or assigned pursuant to such contract." (Doc. 12-1 at 5) (emphasis added). Section 2.4 of the M&O Agreement clearly provides that if the Agreement is terminated, EEP "shall be entitled" to fifty percent of the joint venture's fair market value. (Doc. 1-1 at 4.) It also provides a joint appraisal process by which the parties can assess the fair market value. (Id.) In other words, section 2.4 "especially pledge[s] and assign[s]" liquidated damages to EEP upon the termination of the M&O Agreement. STOFI's argument is, therefore, not supported by the plain language of its governing documents. See generally Retreat at Port of Islands, LLC v. Port of Islands Resort Hotel Condo. Ass'n, 181 So. 3d 531, 532–33 (Fla. 2d DCA 2015) (explaining that organizational bylaws are treated as contracts, and courts should rely on their plain meaning when their language is clear and unambiguous).

### III. The purported waiver in paragraph 7.13 is ambiguous.

STOFI next argues that any possible waiver of tribal sovereign immunity in paragraph 7.13 of the M&O Agreement is too ambiguous to sustain EEP's claims. As explained earlier, section 7.13 appears to contain a limited waiver of tribal sovereign immunity for purposes of arbitrating any dispute about the termination fee in paragraph 2.4. But as STOFI correctly argues, the language of section 7.13 is far too muddled to constitute a clear waiver.

11

Under section 7.13, "the Company, through its parent company [STOFI]," agrees to waive its sovereign immunity for purposes of arbitrating any dispute concerning the termination fee under AAA rules. (Doc. 1-1 at 16.) Strangely, "the Company" is defined earlier in the M&O Agreement to mean "STOFI," which creates a glaring redundancy. (Id. at 1.) If that were not enough, the next sentence provides that neither STOFI nor any affiliated entities shall "be named a party in any arbitration." (Id. at 16–17, ¶ 7.13.) Instead, EEP is only permitted to compel "Seminole Energy" into arbitration. Both parties here seem to agree that "Seminole Energy" was an entity that should have been created under the terms of the M&O Agreement, but for some reason never was. Indeed, they acknowledged as much before the AAA arbitration panel. (Doc. 1-5 at 4–5.) Yet the parties seem to disagree about the precise nature of what "Seminole Energy" was intended to be. According to EEP:

> STOFI intended to use a DBA to run the business operations of the company, but failed to create the "Seminole Energy" moniker. This explains why [paragraph] 7.13 ends the way it does, and also explains why a sovereign immunity waiver would be necessary at all in the context of the arbitration provision.

(Doc. 25 at 21.) This is a perfectly plausible explanation, but it does not appear anywhere on the face of the M&O Agreement. And EEP does not cite any evidence or contractual document to support this reading—the Court is simply supposed to take EEP's word for it. EEP further notes that "STOFI and EEP are the only two parties to the [M&O Agreement] and STOFI is defined as the 'Company.'" (Id.) This is true, but it does not give any immediate insight into what "Seminole Energy" was supposed to be—a fictitious name for STOFI itself, or perhaps a wholly

12

owned subsidiary of STOFI to be created at a later date? Moreover, if Seminole Energy and STOFI were supposed to be one and the same, why does the M&O Agreement contain a provision that bars Seminole Energy "from intentionally taking any action that will be detrimental to the operations or financial performance of [STOFI]?" (Doc. 1-1 at 13 ¶ 4.7.) For its part, STOFI does not concede that Seminole Energy was intended to be a fictitious name, so the Court is left with nothing but the unclear language of the M&O Agreement to support STOFI's purported waiver of tribal sovereign immunity. That is not enough.

"Suits against Indian tribes are . . . barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla., 498 U.S. 505, 509 (1991) (emphasis added) (citing Santa Clara Pueblo, 436 U.S. at 58). A "clear" waiver of tribal sovereign immunity "must be unequivocally expressed" and "cannot be implied." Santa Clara Pueblo, 436 U.S. at 58 (indirectly quoting United States v. King, 395 U.S. 1, 4 (1969)). These strict standards of clarity, which are more typically applied to statutory waivers, hold true for contractual waivers of immunity as well.

For example, in C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma, the Supreme Court held that a contract clearly waived tribal sovereign immunity because it: (1) contained an arbitration clause that incorporated AAA rules, and (2) incorporated Oklahoma's law of arbitration. 532 U.S. 411, 418–20 (2001). These two characteristics of the contract, which was drafted by the Potawatomi Tribe itself, were enough to waive sovereign immunity

13

because the AAA's rules and Oklahoma law both allowed for an arbitration award to be entered by any federal or state court of competent jurisdiction. Id. But crucially, the Supreme Court repeatedly stressed that there was "nothing ambiguous" about the arbitration agreement in that case. Id. at 420, 423 & n.4.

Here, the M&O Agreement also incorporates the AAA's rules. But unlike the contract in C & L Enterprises, the M&O Agreement is ambiguous because it appears the parties contemplated creating a third entity—Seminole Energy—that would be compelled to arbitrate instead of STOFI. The precise nature of that entity and its relationship to STOFI are not remotely apparent from the M&O Agreement.

Perhaps the Court could discern the true nature of Seminole Energy by looking at parol evidence of the parties' intent. But relying on parol evidence would necessarily imply that the M&O Agreement is ambiguous. See, e.g., Thompson ex rel. R.O.B. v. Johnson, 308 So. 3d 250, 253 (Fla. 5th DCA 2020) ("[A] trial court may consider parol evidence only when a contract is ambiguous." (citation omitted)). And that would mean any purported waiver does not meet the high standard of clarity set by the Supreme Court. See Bank of Okla. v. Muscogee (Creek) Nation, 972 F.2d 1166, 1171 (10th Cir. 1992) ("[T]he contract clauses are at best ambiguous regarding sovereign immunity in any court except tribal court. We hold that the contract provisions do not reach the high threshold required by Santa Clara for clear expression of the Nation's waiver of sovereign immunity.").

The result in this case may seem to be a harsh one. The "clear statement" rule for waivers of sovereign immunity was originally created in the context of

14

statutory construction, not contractual construction.  See, e.g., Edelman v. Jordan, 415 U.S. 651, 673 (1974); Emps. of Dep't of Pub. Health & Welfare v. Dep't of Pub. Health & Welfare, 411 U.S. 279, 287 (1973).  Relying on extrinsic evidence of contracting parties' intent seems a far less perilous venture than attempting to divine legislative intent.  If the Court were presented with extrinsic evidence of what "Seminole Energy" was supposed to be, the ambiguity in the contract could very well be resolved.  But the Court cannot disregard the Supreme Court's demand for a clear and unambiguous waiver of tribal sovereign immunity.  See Okla. Tax Comm'n, 498 U.S. at 509; Santa Clara Pueblo, 436 U.S. at 58; C & L Enters., Inc., 532 U.S. at 420, 423 & n.4.  Because there was not a clear waiver of STOFI's tribal sovereign immunity, the Court is compelled to grant STOFI's motion to dismiss.

## CONCLUSION

For the reasons above, it is **ORDERED**:

1. STOFI's motion to dismiss (Doc. 12) is **GRANTED** on the basis of sovereign immunity.
2. This case is **DISMISSED** without prejudice.
3. The Clerk is **DIRECTED** to terminate any pending deadlines and close the file.

**ORDERED** in Fort Myers, Florida, on September 17, 2021.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

15